IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILMINGTON TRUST COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| COUNTY OF ALLEGHENY, ALLEGHENY COUNTY INDUSTRIAL DEVELOPMENT AUTHORITY, ALLEGHENY COUNTY AIRPORT AUTHORITY, USAIRWAYS, INC., KENT G. GEORGE, EARL HORD, ROBERT J. MACEY, GLENN MAHONE, DAVID J. MAYERNIK, JON PIPPY, RICHARD L. SHAW, MARY PAT SOLTIS, RICH STANIZZO, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, and JOHN DOE 5 | ) 2:04cv1104<br>**Electronic Filing** |
| Defendants. | ) |

## MEMORANDUM OPINION

I. INTRODUCTION

Plaintiff, Wilmington Trust Company ("Wilmington Trust"), brought this action under 42 U.S.C. § 1983 and under state law, seeking to recover principal and interest on bonds issued to refinance certain property and facilities at the Pittsburgh International Airport (the "Airport"). Defendant, Allegheny County Industrial Development Authority (the "ACIDA") and Defendants, County of Allegheny (the "County"), Allegheny County Airport Authority (the "Airport Authority"), and Kent G. George, Earl Hord, Robert J. Macey, Glenn Mahone, David J. Mayernik, Jon Pippy, Richard L. Shaw, Mary Pat Soltis, and Rich Stanizzo (the "ACAA Representatives")(collectively with the Airport Authority, the "ACAA Parties"), have filed motions to dismiss Wilmington Trust's complaint under Rule 12(b)6 of the Federal Rules of Civil Procedure.

## II.  STATEMENT OF THE CASE

On July 1, 1980, the County entered into a Ground Lease Agreement (the "Ground Lease") with the National Transportation Center (the "NTC") under which the County as operator of the Airport leased certain real property at the Airport as well as all its right title and interest in certain facilities to be constructed on the leased property. Complaint ¶ 21. The original term of the Ground Lease was to be twenty (20) years from the Completion Date[1]. Complaint ¶ 23.  Under the Ground Lease, the County consented to a sublease by the NTC of the leased property, including the facilities to be constructed, to US Airways, Inc. ("US Air"). Complaint ¶ 22. The County's consent to sublease, however, did not "vary or modify the terms, covenants and conditions to be observed and performed by NTC and [US Air] pursuant to [the] Lease." *See* Ground Lease ¶ 1(b). Further, the County had the right to terminate the Ground Lease upon an uncured "Event of Default," including the filing of a voluntary petition in bankruptcy by US Air. *See* Ground Lease ¶ 21(a)(i).

The NTC and US Air then entered into a separate Sublease Agreement. Complaint ¶ 30. Construction of the facilities to be leased by US Air in accordance with the 1980 sublease was financed in part by revenue bonds (the "1980 bonds") issued by the ACIDA. Complaint ¶ 29. In July of 1991, the County and the NTC amended the Ground Lease, granting the NTC the right to extend the term to March 1, 2021. Complaint ¶ 25.  On June 1, 1991, the NTC, with the County's consent, assigned all its right, title and interest in the Ground Lease to the ACIDA. Complaint ¶ 25.  At the same time, the ACIDA entered into a Sublease and Security Agreement (the "Sublease") with US Air under which US Air was to sublease the property and facilities.  Complaint ¶¶ 33 and 34.  The Sublease incorporated all the terms, conditions and covenants of the Ground Lease.  Complaint ¶ 35.

In June of 1991, the ACIDA refinanced the 1980 bonds by issuing Airport Special

---

[1]  The Completion Date was March 1, 1982, so the term of the Ground Lease was to expire on March 1, 2002.  Complaint ¶ 23.

2

Facilities Revenue Refunding Bonds, Series 1991A (the "1991A Bonds). Complaint ¶ 31. The 1991A Bonds were issued pursuant to a Trust Indenture dated June 1, 1991, entered between ACIDA and Wilmington Trust as Trustee. Complaint ¶ 32. The Official Statement, published in connection with the issuance of the 1991A Bonds, provides:

> The 1991A Bonds will be secured by an assignment of all right, title and interest of the [ACIDA] in and to the 1980 Ground Lease and the 1991A Sublease . . . Payments of rent by [US Air] under the 1991A Sublease will be sufficient, together with the other funds available for such purpose, to provide for payment of the principal of and premium, if any, and interest on the 1991A Bonds at or prior to their maturity. The obligation of [US Air] to make payment of such rent pursuant to the 1991A Sublease is absolute and unconditional.

Complaint ¶ 37.

In recognition that bonds were to be issued to finance construction of certain facilities at the Airport, the Ground Lease authorized the ACIDA to assign its interest in the Ground Lease "to the Trustee as security under the Trust Indenture for the payment of the principal of, and premium if any, and interest on the Bonds . . ." *See* Ground Lease ¶ 30(c). In accordance with the Trust Indenture, ACIDA granted, conveyed and assigned to Wilmington Trust all its right, title and interest in the Ground Lease and the Sublease. Complaint ¶ 45. The County was not a party to the Trust Identure. On or about September 23, 1999, the County transferred the operation and management of the Airport to the Airport Authority. Complaint ¶ 48.

On or about August 11, 2002, US Air filed a voluntary petition in bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia. Under Paragraph 21(a)(i) of the Ground Lease, US Air's filing constituted an Event of Default. *See* Ground Lease ¶ 21(a). By letter dated December 17, 2003, the Airport Authority advised the ACIDA that, as a result of US Air's bankruptcy and rejection of the Ground Lease, the Airport Authority was terminating the Ground Lease. Complaint ¶ 49; The County's Motion to Dismiss, Ex. H. By letter dated January 2, 2004, the ACIDA waived the thirty (30) day notice requirement under the Ground Lease and agreed that the Amended Ground Lease would be terminated effective

12:02 a.m. on January 5, 2004. Complaint ¶ 50; The County's Motion to Dismiss, Ex. I.

On January 6, 2004, the Airport Authority notified Wilmington Trust that because the Ground Lease had never been extended, and because US Air had rejected the Ground Lease in the bankruptcy proceedings, the Ground Lease was terminated. Complaint ¶ 51. On January 5, 2004, the Airport Authority and US Air entered into a Hangar Facility Lease Agreement (the "2004 Lease") under which the premises which were subject to the Amended Ground Lease and the 1991A Sublease and Security Agreement were leased to US Air for a period of three (3) years. Complaint ¶ 52. No reference to the 1991A Bonds was made in the 2004 Lease, nor was any provision made for the payment of rents and revenues to the Trustee, Wilmington Trust, for payment in turn to the bondholders. *Id.*

### III. STANDARD FOR MOTION TO DISMISS

When considering a Rule 12(b)(6) motion, a court is required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Ford v. Schering-Plough Corp.*, 145 F.3d 601, 604 (3d Cir. 1998). A motion to dismiss under Rule 12(b)(6) may be granted only if the court finds the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45 (1957); *Schering-Plough Corp.*, 145 F.3d at 604. A court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)(quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)). *See also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1997) (noting that courts, when examining 12(b)(6) motions, have rejected "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of

factual allegations").

Generally, "to the extent that [a] court considers evidence beyond the complaint in deciding a 12(b)(6) motion, it is converted to a motion for summary judgment." *Anjelino v. New York Times Co.*, 200 F.3d 73, 88 (3d Cir. 1999). However, in resolving a 12(b)(6) motion to dismiss, a court may look beyond the complaint to matters of public record, including court files and records, and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A court may consider documents which are attached to or submitted with the complaint, as well as legal arguments presented in memorandums or briefs and arguments of counsel. *Pryor v. NCAA*, 288 F.3d 548, 560 (3d Cir. 2002)(citation omitted). Further, documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered. *Id.*

## IV.   DISCUSSION

In its motion, the ACIDA argues that Wilmington Trust's Section 1983 claims must be dismissed because: (a) there is no causal connection between the ACIDA's single action and the alleged constitutional deprivations; (b) Wilmington Trust has not alleged a constitutionally protected property right; (c) the alleged action by the ACIDA fails to shock the conscience; and (d) the complaint fails to state a claim for conspiracy to violate Section 1983. Similarly, the County and the ACAA Parties contend that Wilmington has failed to allege a claim under Section 1983 because the complaint fails to allege (1) the deprivation of a constitutionally protected right; (2) the requisite municipal liability; (3) actions that shock the conscience; (4) the specific personal involvement of each ACAA Representative; and (5) because Wilmington Trust's section 1983 claim fails, its claim of conspiracy to violate Section 1983 must also fail. Further, the County and the ACAA Parties argue that, under the express terms of the

controlling agreements and related documents, Wilmington Trust, as Trustee for the bondholders, has no rights in any of the premises or facilities located at the Airport. Therefore, any claim in derivation of those rights must fail.

A. <u>Wilmington Trust's Section 1983 Claim</u>

Section 1983[2] imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States. *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000). This section does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right. *Id.* (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To establish valid claims under § 1983, Wilmington Trust must demonstrate that the defendants, while acting under color of state law, deprived it of a right secured by the Constitution or the laws of the United States. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995) (citing *Moore v. Tartler*, 986 F.2d 682, 586 (3d Cir. 1993)). Wilmington Trust contends that it was denied its rights under the Due Process Clause of the Fourteenth Amendment.

<u>Substantive Due Process</u>

The Due Process Clause protects both substantive and procedural due process rights. There are two aspects to the substantive prong: (1) a challenge to the validity of legislative acts; and (2) non-legislative actions or executive acts. *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 138-139 (3rd Cir. 2000). The non-legislative or executive acts is applicable here

---

[2] Section 1983 provides that:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

because it concerns actions taken under a contract. To prevail on substantive due process claim under Section 1983, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies. *See Woodwind Estates Ltd. v. W.J. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000) (overruled on other grounds by *United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 399-400 (3d Cir. 2003)).

While it is well settled that certain interests in real property are entitled to substantive due process protection, not all property interests are so protected. *Nicholas v. Pennsylvania State Univ.*, 227 F.3d at 140 (quoting *Reich v. Beharry*, 883 F.2d 239, 243 (3d Cir. 1989)). In explaining the type of property interest protected under substantive due process, the Third Circuit stated:

> On past occasion, we have lamented that "the case law of this circuit and the Supreme Court provides very little guidance as to what constitutes this 'certain quality' of property interest worthy of protection under the substantive due process clause." Nevertheless, we believe that a careful review of the case law does reveal one guiding principle: whether a certain property interest embodies this "particular quality" is not determined by reference to state law, but rather depends on whether that interest is "fundamental" under the United States Constitution. . . . [T]his Circuit has adopted an approach to substantive due process that focuses on the nature of the property interest at stake. By way of illustration, **we have so far limited non-legislative substantive due process review to cases involving real property ownership** . . . we have been reluctant to extend substantive due process protection to other, less fundamental property interests.

*Nicholas v. Pennsylvania State Univ.*, 227 F.3d at 140-141(emphasis added)(internal citations omitted). Moreover, both the Supreme Court and the Third Circuit have admonished courts to "exercise 'utmost care whenever we are asked to break new ground'" in the area of substantive due process. *Nicholas v. Pennsylvania State Univ.*, 227 F.3d at 141 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115 (1992)). The Third Circuit has shown a reluctance to extend substantive due process protection to "other, less fundamental property interests" than real property ownership. *Id.*

Here, Wilmington Trust argues that it was conveyed an interest in real property and the structures thereon in an assignment of right from ACIDA that is protected by the Fourteenth Amendment. ACIDA was the subleasor under the Ground Lease originally entered between the County and the NTC. In accordance with the Trust Indenture, ACIDA then granted, conveyed and assigned to Wilmington Trust all its right, title and interest in the Ground Lease and the Sublease. While it is true that as the subleasor under the Ground Lease, Wilmington Trust certainly had an interest in property for a term of years, such interest was terminable pursuant to the Ground Lease under certain conditions, one of which was the bankruptcy of US Air. The "bundle of rights" assigned to Wilmington Trust under the Ground Lease does not rise to the level of "fundamental property interests" entitled to substantive due process protection. To prevail under Section 1983, a plaintiff seeking to recover against a governmental agency must prove an actual deprivation of a constitutional right. A plaintiff may not recover under Section 1983 for violation of due process because of a mere breach of state law. *See Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992); *DeShaney v. Winnebago Soc. Servs.*, 489 U.S. 189, 202 (1989).

Two general types of contract rights are recognized as property protected under the Fourteenth Amendment: (1) where "the contract confers a protected status, such as those characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits"; or (2) where "'the contract itself includes a provision that the state entity can terminate the contract only for cause.'" *Linan-Faye Construction Co. v. Housing Auth. of the City of Camden*, 49 F.3d 915, 932 (3d Cir. 1995) (quoting *Unger v. National Residents Matching Program,* 928 F.2d 1392, 1399 (3d Cir. 1991)). Neither the Ground Lease, the Amended Ground Lease nor the Sublease confer any protected status similar to that of a welfare recipient or tenured faculty member at a state institution. Furthermore, there are no provisions in the documents that provide for termination of the leases for cause only. In

denying substantive and procedural due process protection based upon contract rights in *Reich v. Beharry*, 883 F.2d 239 (3d Cir. 1989), the Third Circuit stated:

> Many . . . courts have observed that if every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contract claims against public entities. We agree that such a wholesale federalization of state public contract law seems far afield from the great purposes of the due process clause.

*Reich v. Beharry*, 883 F.2d at 242 (citations omitted).

In *Neiderhiser v. Borough of Berwick*, 840 F.2d 213 (3d Cir. 1988), the Third Circuit held that a lessor who had been denied an exemption from a zoning ordinance stated a substantive due process claim by alleging that the exemption application was arbitrarily and irrationally denied.[3] *See Neiderhiser*, 840 F.2d at 218 (citing *Bello v. Walker*, 840 F.2d 1124 (3d Cir. 1988)). Though the ruling implied that a lessor possesses a property interest worthy of substantive due process protection, the court did not so hold. The plaintiffs in *Neiderhiser*, alleged that the zoning exemption was denied for no reason other than that they possessed x-rated movies for rent or resale. The Third Circuit found that this allegation stated a cause of action based on a violation of due process because the denial was based on nothing other than the subject matter of the films distributed, and could be shown to be arbitrary or irrational. *Neiderhiser v. Berwick*, 840 F.2d at 218.

Most substantive due process cases affecting real property, like *Neiderhiser*, involve zoning decisions, building permits, or other governmental permission required for some intended use of land owned by the plaintiffs; matters which were recognized in *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592 (3d Cir. 1993) as implicating a "fundamental" property interest in the ownership of land. *Id.* at 600. *See also Independent Enters. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1180 n.12 (3d Cir. 1997). In the instant case, we have neither

---

[3] The court held that plaintiff had stated a cause of action for due process and violations of the right to free expression under 42 U.S.C. § 1983.

"ownership" of the property nor any type of governmental permission required for an intended use of the land. Wilmington Trust's interests are rights granted under contract, not rights found to be fundamental under the Constitution. This Court, therefore, is loath to extend substantive due process protection to property rights assumed under a contract unless such rights have been recognized as fundamental by the Third Circuit or the Supreme Court. Wilmington Trust's substantive due process claim fails for lack of a property interest protected by the Due Process Clause.

Even if this Court found that Wilmington Trust did in fact have a property right protected under the Due Process Clause, its claim fails nonetheless. To prove a violation of substantive due process in cases involving executive action, a plaintiff must show that the state acted in a manner that "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846-847 (1998); *Schieber v. City of Philadelphia*, 320 F.3d 409, 417 (3d Cir. 2003); *UA Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400-401 (3d Cir. 2003). Whether executive action is conscience shocking and thus "arbitrary in the constitutional sense" depends on the context in which the action takes place. *Schieber v. City of Philadelphia*, 320 F.3d at 417. The Third Circuit has stated that "[w]hat 'shocks the conscience' is 'only the most egregious official conduct.'" *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004) (quoting *County of Sacramento v. Lewis*, 523 U.S. at 846). Therefore, the required governmental actions must be so offensive and egregious that they offend the sensibilities of the average person. *UA Theatre Circuit, Inc. v. Twp. of Warrington.*, 316 F.3d at 400. Whether an incident "shocks the conscience" is a matter of law for the courts to decide. *Benn v. Universal Health Sys.*, 371 F.3d 165, 174 (3d Cir. 2004) *citing Rochin v. California*, 342 U.S. 165, 172 (1952).

There is no dispute that on or about August 11, 2002, US Air filed a voluntary petition in bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia. It is also undisputed that US Air's filing constituted an Event of Default under Paragraph 21(a)(i) of

10

the Ground Lease. Moreover, Wilmington Trust concedes that, in the event of a default, the County had the right "subject the other provisions of this Lease, including Article 30 thereof," to terminate the Ground Lease by giving ACIDA thirty days' prior written notice. Wilmington Trust argues, however, that under Article 30 of the Ground Lease it was entitled to a grace period of at least sixty (60) days before the termination would become effective. Specifically, Article 30 states:

> So long as the Trust Indenture shall be a lien upon NTC's interest under this Lease and Sublease, [the] County will not exercise any right, power or remedy with respect to any Event of Default under Article 21 hereof and no termination of this Lease in connection therewith shall be effective, until the expiration of any grace period provided with respect thereto, plus an additional thirty (30) days after the expiration thereof or until the receipt by the Trustee of a written notice of such Event of Default or a copy of its notice to NTC of such Event of Default together with a period of time which is twice the grace period granted to NTC by the Lease or the period otherwise granted to cure said Event of Default, whichever is later. [The] County will not during such period exercise any right, power, or remedy with respect to any Event of Default hereunder if (i) the Trustee, within any grace period . . . shall give to [the] County written notice that either (a) such Event of Default is not an Event of Default curable by the Trustee and is, therefore, subject to the terms of subsection (g) hereof, or (b) the Trustee intends to undertake the correction of such Event of Default or to cause the same to be corrected, and (ii) the Trustee shall thereafter in the case of any Event of Default referred to in clause (b) of this subsection, prosecute diligently the correction in accordance with the terms of this Lease of such Event of Default, whether by exercise on behalf of NTC of its obligation hereunder, entry on the demised Premises, or otherwise.

See Ground Lease ¶ 30(e).

Despite the Event of Default and the obvious right to terminate, there was neither a termination nor a notification of termination until US Air rejected the sublease in the course of the bankruptcy. Pursuant to US Air's Amended Plan of Reorganization, the sublease between ACIDA and US Air was one of the unexpired leases rejected[4] by US Air in March of 2003. *See*

---

[4] Section 365 of the United States Bankruptcy Code gives a debtor the right to reject unexpired leases in connection with a bankruptcy proceeding. A debtor, "subject to the court's approval, may assume or reject any . . . unexpired lease of the debtor." 11 U.S.C. §365(a).

11

The County's Motion to Dismiss, Exhibit F. The effective date of such rejection, according to the County, was January 5, 2004. *See* The County's Motion to Dismiss, Exhibit H. The Airport Authority then advised the ACIDA by letter dated December 17, 2003, that, as a result of US Air's bankruptcy and rejection of the Ground Lease, the Airport Authority was terminating the Ground Lease. Complaint ¶ 49; The County's Motion to Dismiss, Ex. H. By letter dated January 2, 2004, the ACIDA waived the thirty (30) day notice requirement under the Ground Lease and agreed that the Amended Ground Lease would be terminated effective 12:02 a.m. on January 5, 2004. Complaint ¶ 50; The County's Motion to Dismiss, Ex. I.

There was nothing arbitrary, capricious or egregious in the termination of the Ground Lease. All of the events leading to final termination had bases either under the terms of the Ground Lease or in bankruptcy law. Moreover, the failure by the ACIDA, the County, or the ACAA Parties to provide Wilmington Trust with the proper grace period to cure the default as required under the lease is neither conscience shocking nor arbitrary in the constitutional sense. Based on the above, the Court finds that Wilmington Trust can prove no set of facts in support of its substantive due process claim which would prove that the County's actions in terminating the Ground Lease shocked the sensibilities of the average person. Accordingly, Wilmington Trust's substantive due process claim will be dismissed.

### Procedural Due Process

To recover for an alleged procedural due process violation, Wilmington Trust must demonstrate that: 1) it possessed a property interest subject to protection by the Due Process Clause of the Fourteenth Amendment; 2) the defendants infringed such property interest; and 3) the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process. *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 679-80 (3d Cir. 1991), *cert. denied*, 503 U.S. 984 (1992). Wilmington Trust's procedural due process claim fails in two (2) aspects: it possesses no property interest subject to Fourteenth Amendment protection; and it has no right to a deprivation hearing prior to termination of the

sublease.

Though a property right subject to procedural due process protection may be different from a property right protected by substantive due process, the results are the same in this instance. A property interest subject to protection by the due process clause results from a "legitimate claim of entitlement" created by an independent source such as state law. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Specifically, the Court stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Id.* at 577. In *Adams Parking Garage, Inc. v. City of Scranton*, 33 Fed. Appx. 28 (3d Cir. 2002), a case similar to the instant case, the Third Circuit held that the plaintiff's substantive and procedural due process claims failed for lack of a property interest protected by the Due Process Clause. The court found that pursuant to the lease, the City of Scranton was entitled top terminate the lease upon condemnation of the property, even where the condemnor was the Scranton Redevelopment Authority. *Adams Parking Garage, Inc. v. City of Scranton*, 33 Fed. Appx. at 32. With no legitimate claim of entitlement to a longer lease under state law, the court found that the plaintiff was deprived of no cognizable property interest. *Id.*

Similarly here, the language of the Ground Lease is clear and unambiguous. The County was permitted to terminate the lease in the Event of Default. Wilmington Trust, therefore, has no legitimate claim of entitlement a longer lease under state law. Further, Wilmington Trust has no right to a deprivation hearing prior to termination of the sublease. The Third Circuit has found that any assertion that a due process hearing is required "before any public agency can ever terminate or breach a contract" is "[u]nrealistic and contrary to common sense." *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir. 1991)(quoting *Boucvalt v. Board of Comm'rs*, 798 F.2d 722, 729-30 (5th Cir. 1986)). Accordingly, Wilmington Trust's procedural due process claim must be dismissed.

B. <u>Wilmington Trust's Claim of Conspiracy to Violate Section 1983</u>

In its complaint, Wilmington Trust alleges a conspiracy on the part of all defendants except the County to violate 42 U.S.C. § 1983. Because the Court finds that Wilmington Trust has failed to state a claim under Section 1983, it cannot maintain an action for conspiracy to violate Section 1983. Though "the existence of a conspiracy otherwise may supply the element of state action and expand the scope of liability through the concept of imputation, § 1983 does not provide a cause of action per se for conspiracy to deprive one of a constitutional right. Without an actual deprivation, there can be no liability under § 1983." *See Holt Cargo Sys. v. Delaware River Port Auth.*, 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998) quoting *Defeo v. Sill*, 810 F. Supp. 648, 658 (E.D. Pa. 1993); *also see Mody v. City of Hoboken*, 959 F.2d 461, 466 (3d Cir. 1992). As the Court has found that Wilmington Trust suffered no deprivation of a constitutionally protected property interest, its conspiracy claim must fail.

C. <u>Wilmington Trust's Pendent State Claims</u>

In its complaint, Wilmington Trust alleges the following state law claims: (1) an action on the bonds against ACIDA (Count III); (2) an action in ejectment for possession against the County, the Airport Authority, and US Air (Count IV); and, (3) an action in trespass and for fair market rental value against the Airport Authority and US Air. After a review of the complaint and the arguments of the parties, the Court agrees with Wilmington Trust's contention that the issues presented in the claims cannot be decided at this point in the litigation. However, the Court is not convinced that it has subject matter jurisdiction over the pendent state claims.

Wilmington contends that the Court has jurisdiction over the pendent state claims because such claims are between citizens of different states and involve an amount in controversy in excess of $75,000.00 as required under 28 U.S.C. § 1332. Complaint ¶ 3. In its complaint, Wilmington alleges that it is a Delaware banking corporation, and that US Air is also a Delaware corporation. Complaint ¶¶ 5 and 9.

In order "to satisfy the jurisdictional requirements of 28 U.S.C. § 1332(a)(1) . . . diversity must be complete; that is, no plaintiff can be a citizen of the same state as any of the defendants." *Midlantic Nat. Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir. 1995)(citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1992); *Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1142 (3d Cir. 1972)). Jurisdiction is lacking, therefore, if any plaintiff and any defendant are citizens of the same state. *The Mennen Co. v. Atl. Mut. Ins. Co.*, 147 F.3d 287, 290 (3d Cir. 1998)(citation omitted). Moreover, under Section 1332, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated **and** of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

If complaint fails to allege subject matter jurisdiction, or contains defects in the jurisdictional allegations, it may be challenged on its face. 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1250, at 212-18 (2d ed. 1990). A court evaluating a facial challenge must accept the allegations in the complaint as true, and disposition of the motion becomes purely a legal question. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen*, 549 F.2d at 891. In reviewing a facial attack, a court may rely on documents referenced within the complaint and attached thereto, but must view them in the light most favorable to the nonmoving party. *See id.* at 176 & n.6; *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

It is clear from the face of the complaint that both US Air and Wilmington Trust are citizens of Delaware under 28 U.S.C. § 1332(c)(1). Because complete diversity does not exist between Wilmington Trust and **all** of the defendants, the pendent state claims must be dismissed for lack of subject matter jurisdiction.

V.   **CONCLUSION**

Based on the foregoing, Counts I and II of Plaintiff's complaint shall be dismissed pursuant to FED. R. CIV. P. 12(b)(6). The remaining pendent state claims shall be dismissed for lack of subject matter jurisdiction. An appropriate order will follow.

Cercone, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILMINGTON TRUST COMPANY,** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **COUNTY OF ALLEGHENY,** ) <br> **ALLEGHENY COUNTY INDUSTRIAL** ) <br> **DEVELOPMENT AUTHORITY,** ) <br> **ALLEGHENY COUNTY AIRPORT** ) <br> **AUTHORITY, USAIRWAYS, INC.,** ) <br> **KENT G. GEORGE, EARL HORD,** ) <br> **ROBERT J. MACEY, GLENN** ) <br> **MAHONE, DAVID J. MAYERNIK,** ) <br> **JON PIPPY, RICHARD L. SHAW,** ) <br> **MARY PAT SOLTIS, RICH** ) <br> **STANIZZO, JOHN DOE 1,** ) <br> **JOHN DOE 2, JOHN DOE 3,** ) <br> **JOHN DOE 4,** and **JOHN DOE 5** ) <br> ) <br> Defendants. ) | 2:04cv1104 <br> **Electronic Filing** |

**ORDER OF COURT**

AND NOW, this 9th day of September, 2005, upon consideration of the Motions to Dismiss filed on behalf of Defendants, County of Allegheny, Allegheny County Airport Authority, Kent G. George, Earl Hord, Robert J. Macey, Glenn Mahone, David J. Mayernik Jon Pippy, Richard L. Shaw, Mary Pat Soltis, and Rich Stanizzo (**Document No. 6**), and on behalf of the Defendant, Allegheny County Industrial Development Authority (**Document No. 7**), the Plaintiff's response thereto, together with the briefs and appendices filed therewith,

IT IS HEREBY ORDERED that the motions to dismiss are **GRANTED**. Counts I and II of Plaintiff's complaint are hereby **DISMISSED** pursuant to FED. R. CIV. P. 12(b)(6). The remaining pendent state claims are hereby **DISMISSED** for lack of subject matter jurisdiction. The Clerk is directed to mark this case closed.

*DS Cercone*

David Stewart Cercone
United States District Judge

cc:  Thomas R. Johnson, Esquire
Kenneth J. Benson, Esquire
David M. Aceto, Esquire
Kirkpatrick & Lockhart, LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222-2312

Judith F. Olson, Esquire
John K. Gleason, Esquire
Janette D. Simmons, Esquire
Schnader Harrison Segal & Lewis
120 Fifth Avenue
Suite 2700, Fifth Avenue Place
Pittsburgh, PA 15222-3001

Mark F. Nowak, Esquire
Stacey L. Jarrell, Esquire
Thorp Reed & Armstrong
One Oxford Centre, 14th Floor
301 Grant Street
Pittsburgh, PA 15219-1425

Thomas P. McGinnis, Esquire
Thomas, Thomas & Hafer, LLP
One Oxford Centre, Suite 1150
301 Grant Street
Pittsburgh, PA 15219